CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

6/22/2022
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JONATHAN T.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:21cv00029 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Jonathan T. ("Jonathan") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. §§ 1381–1383f. Jonathan alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine his RFC, including assessing his mental impairments; and (2) assess his allegations regarding his symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 16) and **DENYING** Jonathan's Motion for Summary Judgment (Dkt. 14).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Jonathan failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Jonathan filed for SSI and DIB in October 2019, claiming that his disability began on December 31, 2016, due schizophrenia, bipolar disorder, amphetamine use disorder, and a bad

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

leg. R. 116, 207. Jonathan's date last insured was March 31, 2021; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 18; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Jonathan's application at the initial and reconsideration levels of administrative review.[4] R. 85–114, 115–40. On September 14, 2020, ALJ Suzette Knight held a hearing to consider Jonathan's clams for DIB and SSI. R. 33–63. Counsel represented Jonathan at the hearing, which included testimony from vocational expert Mitchell Schmidt. On October 15, 2020, the ALJ entered her decision analyzing Jonathan's claims under the familiar five-step process[5] and denying his claim for benefits. R. 17–27.

The ALJ found that Jonathan was insured at the time of the alleged onset and that he suffered from the severe impairments of dysfunction of major joints, discogenic and degenerative disorders of the back, and obesity. R. 20. The ALJ found that Jonathan's medically determinable impairments of schizophrenia spectrum and other psychotic disorder, depression, bipolar and related disorders, and substance addiction disorder, were non-severe. Id. The ALJ found Jonathan had mild limitations in the broad functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 21–22. The ALJ determined that

---

[4] Jonathan was 44 years old on his alleged onset date, and 48 years old on the date of the ALJ's decision, making him a younger person under the Act. R. 25, 85.

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Jonathan did not have an impairment or combination of impairments that meets or medically equals a listed impairment. R. 21. The ALJ specifically considered listings 1.02 and 1.04, as well as Jonathan's obesity under SSR-19-2p. R. 21–22.

The ALJ concluded that Jonathan retained the residual functional capacity ("RFC") to perform a limited range of light work, including only occasionally pushing/pulling with the left lower extremity and only frequently climbing, balancing, stooping, kneeling, crouching, and crawling. R. 22. The ALJ determined that Jonathan was capable of performing his past relevant work as a lubrication technician. R. 25. The ALJ alternatively found that Jonathan could perform other jobs that exist in the national economy, such as housekeeping cleaner, paper-pattern folder, and bagger. R. 26. Thus, the ALJ determined that Jonathan was not disabled. Id. Jonathan appealed the ALJ's decision, and the Appeals Council denied his request for review on April 16, 2021. R. 1–3.

## ANALYSIS

Jonathan alleges that the ALJ's RFC is not supported by substantial evidence, including because it did not include any restrictions relating to his mental impairments. Jonathan also alleges that that the ALJ failed to properly assess his allegations.

### A. Medical History Overview

1. Medical Treatment

Jonathan has a history of neck and back pain, even prior to his alleged onset date in December 2016. X-rays of his cervical spine in September 2019 showed multilevel degenerative changes. R. 306. Jonathan also has a history of leg and foot pain that predates his alleged onset date but reported some improvement following surgery to remove hardware from his foot in August 2019. R. 307, 310. Jonathan broke his right hand in June 2020 while attempting to stop

his dog from attacking another dog. R. 625. In July 2020, doctors indicated the break was healing well and did not need to be immobilized any longer. R. 661. Regarding his mental impairments, Jonathan's mental health provider at Horizon Behavior Health noted rule out diagnoses of schizophrenia and bipolar disorder during the quarterly review in December 2019.[6] R. 529. Jonathan attended therapy during the relevant period, reporting depression and anxiety, which does improve when he takes his medication properly. R. 589. Jonathan also has a history of substance addiction disorder and testified at the hearing that he has stopped using illegal drugs, as well as alcohol. R. 49.

   2. Medical Opinions

In June 2019, state agency physician Jack Hutcheson reviewed the record and found Jonathan capable of a limited range of light work, including only occasional pushing and pulling with the left lower extremity. R. 93–95. The ALJ found Dr. Hutcheson's opinion generally persuasive. R. 24. However, the ALJ found the evaluator on reconsideration, who found Jonathan capable of a full range of light work, not generally persuasive, noting that the evidence established Jonathan as more limited. Id.

State agency psychologists Joseph Leizer, Ph.D. and Jo McClain, Psy.D. also reviewed the record in January and March 2020, respectively, and found a severe substance addiction disorder. The ALJ found these opinions partially persuasive, noting that while Jonathan does have a long history of substance abuse, he has completed treatment and is not currently abusing. R. 24. The ALJ found that because his substance addiction disorder does not impose more than a minimal effect on his ability to function, it is non-severe. R. 24.

---

[6] For the schizophrenia diagnosis, the notes indicate: rule out substance induced, versus organic by history. R. 529.

B.  RFC

Jonathan argues that the ALJ's mental RFC is not supported by substantial evidence, contending that the ALJ erred by failing to complete the more detailed "function-by-function" assessment required by SSR 96-8p. Pl.'s Br. at 7–8, Dkt. 15. In support, Jonathan also argues that the ALJ erred by finding his mental impairments non-severe. The Commissioner counters that the ALJ properly considered Jonathan's mental impairments and followed the requirements of SSR 96-8p.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work.  Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other

6

inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a discussion of Jonathan's medical records, the medical opinions, Jonathan's hearing testimony, and the ALJ's conclusions. The ALJ explained that Jonathan's medically determinable mental impairments of schizophrenia spectrum and other psychotic disorder, depressive, bipolar and related disorders, and substance addiction disorder were non-severe. The ALJ noted that Jonathan reported improvement with medications, as well as since he stopped abusing substances, and that he "completed his treatment program with good progress." R. 20. Jonathan takes issue with the ALJ's interpretation of several medical records, including that he "reported feeling depressed when he ran out of medications." R. 20. However, this is a fair depiction of the record, which indicates:

> [Jonathan] reports he was doing well till he ran out of Depakote; has been out for about a week; feel depressed 7, anxiety 5 of 10 (10 is the highest), has good sleep/appetite, denies [suicidal / homicidal ideation]

R. 586. Further, contrary to Jonathan's argument, the ALJ acknowledged that Jonathan had ongoing treatment and medication for his mental impairments, and specifically noted that, while his mood was "usually good" it was also occasionally depressed and anxious. R. 20. Likewise, the state agency doctors found that Jonathan's medically determinable impairments of schizophrenia spectrum and other psychotic disorder, depression, bipolar and related disorders, were non-severe, writing that his diagnoses of schizophrenia and bipolar disorder are both "in the context of past history of extensive drug use (and are given [rule out] qualifiers") and that "he does not appear to have severe schizophrenic or bipolar symptoms." R. 92–93.

Regarding the ALJ's determination that Jonathan had a mild limitation in concentration, persistence, or pace, the ALJ acknowledged that, this domain "could be affected by substance abuse" but reasons that Jonathan does a number of tasks requiring these skills, including cooking, laundry, driving, and shopping. R. 21. The ALJ also noted that, despite his long history of substance abuse, he has completed treatment and is not currently using substances. R. 24. To support his argument, Jonathan points to two locations in the record where "medical personnel" reported poor concentration.[7] R. 345, 556. However, I find that on balance, the ALJ's determination that Jonathan did not have a severe mental impairment is supported by substantial evidence. The ALJ explained that Jonathan's mental impairments have responded well to medication and to therapy and impose no more than a minimal effect on his ability to function, making them non-severe. R. 24. As stated, none of the state agency doctors found that Jonathan's medically determinable mental impairment of schizophrenia or bipolar disorder were severe. Dr.

---

[7] At R. 345, Jonathan reported to his provider "difficulty concentrating" as part of anxiety related symptoms. At R. 556, the provider indicated poor concentration and explained that he "frequently questioned clinician about how long this assessment would be, forgot that clinician had explained that she was an LCSW and not a psychiatrist and asked why she could not give him refills today. Able to comprehend once this was explained a second time. Reports he smoked marijuana this AM before app[ointment]."

Leizer indicated in January 2020 that Jonathan's mental status exams were "largely normal," he does not show abnormal thinking, and does not appear to have severe schizophrenic or bipolar symptoms. R. 93. Finally, as the Commissioner points out, none of Jonathan's doctors indicated any work-related limitations due to his mental impairments. D.'s Br. at 8, Dkt. 17.

### C. Subjective Allegations

Jonathan argues that the ALJ's assessment of his allegations is not supported by substantial evidence. In support, Jonathan points out the ALJ's misstatement that he broke his hand in June 2019, when the broken hand actually occurred in June 2020. Jonathan also asserts that the ALJ wrongly relied on his conservative treatment, his hand fracture healing well, including requiring no further immobilization, and walking normally without an assistive device to discredit his allegations. He points to cases finding that "having a normal gait is not inconsistent with disabling back pain." Pl's Br. at 13, Dkt. 15. Finally, Jonathan argues that the ALJ erred by relying on his daily activities to show he is capable of working. However, I find that the ALJ accurately and appropriately considered these portions of the record in assessing the consistency of Jonathan's allegations.

As an initial matter, I recognize that the ALJ did mistakenly note that Johnathan's hand injury occurred in June and July 2019, from a dog bite, when it happened in June and July 2020, because Johnathan punched a dog.[8] At Jonathan's follow-up visit on July 11, 2020, the provider wrote the fracture was healing well, with no further immobilization needed, and no specific follow up required or physical therapy recommended. R. 661–62. The medical record does not show any additional treatment. Indeed, as the Commissioner points out, none of Jonathan's treating doctors found any physical work-related limitations. Despite her mistake regarding the

---

[8] The record dated June 30, 2020 indicates as a mechanism of injury that on June 23, 2020 Jonathan "punched his dog to get him off of his other dog." R. 666.

9

date and mechanism of injury, it is clear the ALJ understood the essential content of the record, including that Jonathan broke his hand, and it was "healing well" and I find the error was harmless. See Baker v. Berryhill, No. CV 5:16-0821-DCN-KDW, 2017 WL 9289362, at *10 (D.S.C. Mar. 10, 2017), report and recommendation adopted, No. 5:16-CV-0821-DCN, 2017 WL 4296430 (D.S.C. Sept. 28, 2017) citing Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[9] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by

---

[9] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a discussion of Jonathan's medical history and his treatment, as well as his own allegations, and the ALJ adequately explained her finding that Jonathan's allegations were not entirely consistent with the medical evidence and other evidence in the record. The ALJ acknowledged Jonathan's testimony at the hearing, including his pain and difficulty standing, increased pain with walking, and occasional hand and arm numbness. R. 23. The ALJ also acknowledged that that diagnostic testing showed degenerative changes, and that Jonathan suffers arthritis stemming from motor vehicle accidents where he injured his leg, back, and ankle. Significantly, the ALJ did not reason that Jonathan's normal gait meant he was not in pain; in contrast, the ALJ explained that the RFC accommodates the pain arising from his leg impairment with exertional and postural limitations. Id. The ALJ explained that Jonathan's degenerative disk disease, arthritis, and obesity limit him to the light exertional level and also effect his ability to perform certain postural activities. Id. Likewise, the ALJ appropriately relied on Jonathan's daily activities as just one of several reasons to discount his subjective allegations. This is the ALJ's job, to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight).

The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported her analysis of Jonathan's

subjective complaints with substantial evidence, and that Jonathan is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: June 22, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge